# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DONALD J. BECK, on behalf of
himself and all others similarly
situated,                                  Case No. _____

               Plaintiff,                Hon.

v.

FCA US, LLC, a Delaware Limited
Liability Company,

               Defendant.

_____

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................. 1

JURISDICTION AND VENUE ........................................... 6

PARTIES ............................................................................. 7

    I.    Plaintiff ................................................................ 7

    II.   Defendant ............................................................ 8

FACTUAL ALLEGATIONS ............................................... 9

    I.    Shift-by-Wire Transmission Systems and the Defective Shifter System ................................. 9

    II.   The Defective Shifter System Wrongly Indicates that the Class Vehicles Are in Park When They are Not ................................. 13

    III.  FCA Touts Safety in Its Marketing and Advertising .......................... 16

    IV.  FCA Knew About the Defective Shifter System and Associated Safety Risks ................................. 23

    V.   NHTSA Opens Investigation into Defective Shifter System in Class Vehicles after Related Rollaway Recall Concerning other FCA Vehicles with Shift-by-Wire Transmission Systems ................................. 37

    VI.  FCA Has Not Provided a Remedy within a Reasonable Time ................................. 38

    VII.  The Defective Shifter System Deprives Class Members of the Benefit of their Bargain .......................... 40

TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL ................................. 44

CLASS ALLEGATIONS ..................................................... 45

VIOLATIONS ALLEGED ................................................... 49

REQUEST FOR RELIEF ..................................................... 73

DEMAND FOR JURY TRIAL ............................................ 74

i

The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## **INTRODUCTION**

1.     Plaintiff Donald J. Beck ("Plaintiff") brings this class action, individually and on behalf of all persons in the United States who purchased, leased, or own a 2013-2016 Ram 1500 or 2014-2016 Dodge Durango ("Class Vehicles") equipped with a rotary shifter system, for FCA's fraud, misrepresentation, and concealment of a known gear shifter system defect in the Class Vehicles.

2.     The design of a gear shifter system must be such that drivers know when a car is safe to exit because it is in the "Park" mode. Further, if a car maker decides to use electronically controlled "rotary" shifters—rather than traditional mechanical sliding shifters—it should include a safety override that automatically puts the car in Park or engages the parking brake when the driver gets out of the car.

---

[1] Counsel's investigation includes an analysis of publicly available information, including consumer complaints, the investigation by the National Highway Transportation Safety Administration, and additional analysis.  Plaintiff believes that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

3.     FCA US LLC ("FCA," "Company," or "Defendant") broke these basic rules when it designed and manufactured cars with rotary shifter systems that wrongly indicate cars are in Park when they are not and, also, fail to include any safety override feature for preventing rollaway accidents caused by such misinformation. From 2012 to 2015, FCA sold or leased approximately one million vehicles throughout the United States that contained a concealed and dangerous gearshift system defect that places drivers and occupants of the vehicles, as well as the public, at risk for serious injury or death. Thus, all purchasers and lessees of these vehicles paid more than the vehicle was actually worth.

4.     FCA installed gear shifter systems in the Class Vehicles that departed from traditional automatic transmission gear selector design. Most cars have conventional "PRND" levers located on the steering column or center console; these types of gear shifters are then tied to a cable that allows drivers to physically change gears when they so choose.[2] Drivers can slide these levers either forward or backward to put the car into the gear they desire.

5.     The Class Vehicles, on the other hand, are equipped with an electronically controlled shifter system operated by a dial-like rotary knob (the

---

[2] Exhibit A, Tom Krisher, *Ram, Durango Gearshifts under Investigation,* U.S. NEWS, December 20, 2016, http://www.usnews.com/news/business/articles/2016-12-20/govt-investigates-fiat-chrysler-shifters-for-rollaway-risk ("December 2016 US News Article").

"Defective Shifter System"). The Defective Shifter System deviates from that of conventional automatic transmission shifter systems and, further, is dangerously defective because it (1) wrongly indicates that cars are in Park when they are not and (2) fails to include a safety override that would automatically put the vehicle in Park or engage a parking brake when a driver attempts to exit the vehicle when it is not in Park. These dangerous defects have resulted in numerous accidents and vehicle rollaways as a result of drivers not knowing which gear their transmission is in and/or exiting their vehicle without the vehicle in Park.

6.      As of last month, the National Highway Transportation Safety Administration ("NHTSA") and the Office of Defects Investigation ("ODI") (collectively, "NHTSA-ODI") had received 43 complaints of vehicle rollaways and/or accidents following intended shifts to Park due to Defective Shifter Systems in 2013-2016 Ram 1500s and 2014-2016 Dodge Durangos—including 25 incidents that resulted in crashes and 9 injuries.[3]

7.      On December 16, 2016, NHTSA opened an investigation into these incidents and announced:

> The Office of Defects Investigation (ODI) has identified 43 complaints alleging vehicle rollaway from a parked position in model year (MY) 2013-2016 Ram 1500 and MY 2014-2016 Dodge Durango. These subject vehicles are equipped with an electronically shifted

---

[3] *See* Exhibit B ("ODI Resume", announcing the opening of a Preliminary Evaluation).

transmission and electronic rotary control for driver gear selections. The reports alleged that the unintended motion occurred after the driver moved the transmission gear selector to Park and exited the vehicle. Nine injuries have been alleged in eight reports, 25 crashes are alleged. Thirty-four of the reports alleged that the vehicle was moving while the shifter indicated that it was in the park position. Many of the incidents alleged the engine was running, however it was noted as off in a few cases.[4]

8.      NHTSA estimates that 1,000,000 vehicles will be affected by this investigation.[5]

9.      Although FCA has known (or should have known) of the Defective Shifter System and associated safety risk since shortly after certain of the Class Vehicles were placed on the market in 2012, it has failed to act within a reasonable time to notify Plaintiff and members of the Classes (defined below) of the defect and/or provide a remedy to protect them from the associated safety risks.

10.     FCA competitors, including BMW, have used similar, non-traditional shifter systems.  But, in its vehicles incorporating such systems, BMW included a safety override: if a car is not in "Park," the driver's door is opened, and the foot brake is released, the car automatically shifts into "Park." FCA chose not to include such a safety override in the Class Vehicles.

11.     FCA provides express warranties for the Class Vehicles, including a Basic Limited Warranty ("BLW") for a period of three years or 36,000 miles,

---

[4] *Id.*

[5] *Id.*

whichever occurs first. This BLW exists to cover defects in "material, workmanship or factory preparation." FCA also provides a powertrain limited warranty that covers the engine and transmission, including the shifter assembly, for five years or 100,000 miles, whichever occurs first, for the Class Vehicles. Despite these warranties, FCA has failed to remedy the Defective Shifter System free of charge within a reasonable time.

12.     Plaintiff and members of the Classes were harmed by the Defective Shifter System in a number of ways, including, that they did not receive the benefit of the bargain of the purchase or lease of the Class Vehicles which were sold and leased as safe and reliable vehicles at premium prices even though they contained a known but concealed defect and own a vehicle that is diminishing in value at an increased rate each month and thus cannot be sold without incurring substantial losses.

13.     FCA misrepresented the standard, quality, or grade of the Class Vehicles and knowingly, actively, and affirmatively omitted and/or concealed the existence of the Defective Shifter System to increase profits by selling additional Class Vehicles. Knowledge and information regarding the Defective Shifter System and associated safety risks were in the exclusive and superior possession of FCA and its dealers, and was not provided to Plaintiff and members of the Classes, who could not reasonably discover the defect through due diligence. Based on pre-

production testing, design failure mode effects analysis, and consumer complaints to dealers and NHTSA, *inter alia*, FCA was aware of the defect in the Defective Shifter System and fraudulently concealed the defect from Plaintiff and members of the Classes.

14. Plaintiff and members of the Classes (defined below) assert claims against FCA for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. and various California state laws.

15. As a direct result of FCA's wrongful conduct, Plaintiff and members of the Classes have been harmed and are entitled to actual damages, including damages for the benefit of the bargain they struck when purchasing their vehicles, the diminished value of their vehicles, statutory damages, punitive damages for FCA's knowing fraud that put drivers and members of the public nationwide at risk, attorneys' fees, costs, restitution, and injunctive and declaratory relief.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from FCA, and greater than two-thirds of the members of the Classes reside in states other than the state in which FCA is a citizen. This Court

6

has jurisdiction over supplemental state law claims pursuant to 20 U.S.C. § 1367 and jurisdiction over the Magnuson Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

17.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because FCA maintains its principal place of business in this District, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and because FCA conducts a substantial amount of business in this District. Accordingly, FCA has sufficient contacts with this District to subject FCA to personal jurisdiction in the District and venue is proper.

## PARTIES

### I.    PLAINTIFF

18.    Plaintiff Donald J. Beck is a resident of California domiciled in San Diego, California. On June 22, 2015, Plaintiff purchased a new 2015 Ram 1500 from a dealership in Carlsbad, California for personal or household purposes. He purchased the car because of its reputation for safety and utility consistent with his review of FCA's advertising messaging regarding safety and reliability. Plaintiff believed his Ram 1500 would be a good value because of its utility and reputation for safety. Plaintiff still owns his Ram 1500.

19.    Unbeknownst to Plaintiff at the time of purchase, his vehicle was equipped with the Defective Shifter System, which had a known but concealed defect that made the vehicle unreasonably dangerous, and failed to include any safety override function to ensure the vehicle was in the proper gear and would not unexpectedly rollaway or shift into unintended gears.  To date, FCA still has not issued a warning to Plaintiff regarding the Defective Shifter System and the corresponding safety risk associated with his vehicle. Given the Defective Shifter System, Plaintiff experienced a rollaway incident in his Ram 1500.  During this incident, Plaintiff pulled into his driveway and put the vehicle in "Park."  The vehicle started rolling backwards down the driveway before Plaintiff could turn off the engine.

## II.    DEFENDANT

20.    Defendant FCA is a Delaware limited liability company with its principal place of business at 1000 Chrysler Drive, Auburn Hills, Michigan. FCA is a member of the Fiat Chrysler Automobiles N.V. ("Fiat Chrysler") family of companies. Fiat Chrysler is a Dutch corporation with its headquarters in London, England. As of 2015, FCA is the seventh largest automaker in the world by unit production.

21.    FCA designs, engineers, manufactures, and sells vehicles under the Ram and Durango brands in this District and throughout the United States. FCA

8

manufactures, distributes, and sells motor vehicles, and parts through its network of authorized motor vehicle dealers. FCA engages in interstate commerce by selling vehicles through this its authorized dealers located in every state of the United States, including within this District.

22.     At all times relevant to this action, FCA and/or its agents manufactured, distributed, sold, leased, and warranted the Class Vehicles throughout the United States. FCA and/or its agents designed, manufactured, and/or installed the Defective Shifter System in the Class Vehicles. FCA and/or its agents also developed and disseminated the owner's manuals and warranty booklets, advertisements and other promotional materials relating to the Class Vehicles.

## FACTUAL ALLEGATIONS

## I.     SHIFT-BY-WIRE TRANSMISSION SYSTEMS AND THE DEFECTIVE SHIFTER SYSTEM

23.     Shift-by-wire transmission systems, like the one installed in the Class Vehicles, manipulate gear changes without the use of a mechanical linkage between the gear-shifting lever and the transmission—thus saving materials and manufacturing costs and, also, clearing valuable design space in the center console area where the mechanical link to the transmission would be installed.

24.     Shift-by-wire transmissions use electronic signals and electronic control modules to manipulate transmission gear changes. Drivers engage control

9

mechanisms such as levers, buttons, and/or dial-like rotary knobs that send electronic signals to manipulate the electronic control module, which shifts the transmission into the desired gear. Control mechanisms currently in use include: (1) a monostable electronic gear shift ("Monostable Shifter"); (2) a polystable electronic gear shift ("Polystable Shifter"); and (3) a rotary electronic gear shift ("Rotary Shifter").

### Monostable Shifters

25.    Monostable Shifters are characterized as "monostable" because their shifter levers are supposed to return to a single predetermined location after the desired gear is selected. Drivers push or pull a Monostable Shifter lever backward or forward one or more times and release the lever at their desired gear. The shift-by-wire system then relies on electronic signals and an electronic control module to shift the transmission into the selected gear. Monostable Shifter levers do not physically move and rest in separate physical positions, or "detents," for Park, Reverse, Neutral and Drive ("PRND") in order to change transmission gears.

26.    Below is an image of Monostable Shifter that FCA used in its 2015 Jeep Grand Cherokee:



27.     Rollaway-related claims brought against FCA for their installation of faulty Monostable Shifters are currently pending before this Court.  *See In Re: FCA US LLC Monostable Electronic Gearshift Litigation*, MDL. No. 2744, Doc. No. 31 (E.D. Mich. Dec. 23, 2016) ("Consolidated Master Class Action Complaint and Demand Jury Trial").

### *Polystable Shifters*

28.     Polystable Shifters, on the other hand, incorporate the shift-by-wire electronic gear changes and the tactile feedback of a traditional mechanical gear shifter. The Polystable Shifter mimics the tactile feedback of a traditional mechanical gear shifter because it requires drivers to push or pull the shifter into predetermined physical slots for P, R, N or D.

29.     Below is an image of Polystable Shifter that FCA began using in 2016 Jeep Grand Cherokees:

11



30.    As shown above, the Polystable Shifter, unlike the Monostable Shifter, slides back and forth and rests in predetermined physical slots for P, R, N or D.

### *Rotary Shifters*

31.    Different from both the Monostable and Polystable Shifters, Rotary Shifters—the gear shifters installed in the Class Vehicles—do not even use a shift lever.  Rather, the Rotary Shifter uses a rotary wheel to cycle through PRND and, then, sends the electronic signal that corresponds with the selected gear.

32.    Once drivers have selected their desired gear, Rotary Shifters illuminate PRND letters above the rotary knob and PRND letters on the driver's

informational display to indicate whether the vehicle is in Park, Reverse, Neutral or Drive.

33.     Below is an image of the Rotary Shifter in a 2014 Dodge Durango, a Class Vehicle:



## II.     THE DEFECTIVE SHIFTER SYSTEM WRONGLY INDICATES THAT THE CLASS VEHICLES ARE IN PARK WHEN THEY ARE NOT

34.     The Defective Shifter Systems installed in the Class Vehicles are unreasonably dangerous and defective because, *inter alia*, they incorrectly indicate—vis-à-vis the illuminated PRND informational displays—that cars are in Park when they are not. This has led to Class Vehicles rolling away when drivers thought their vehicles were in Park.

35. Consumer complaints, including complaints to NHTSA, beginning at least as early as 2013 evidence that the Class Vehicles have rolled away when they appear to be in Park, resulting in accidents and injuries.

36. FCA has failed to inform Plaintiff and members of the Classes of the Defective Shifter System which contains an unreasonably dangerouse defect, and failed to implement any safety-override that would cause the Class Vehicles to automatically shift into Park or engage the parking brake when the driver-side door is open and the driver is exiting the Vehicle.

37. Safety override features are common in other car companies' vehicles that use unconventional shifter systems.  For example, Mercedes-Benz USA, LLC ("Mercedes-Benz") sells vehicles with monostable shifters, but the Mercedes-Benz vehicles include a safety feature that automatically shifts the gear to Park when the engine is running, the driver releases his foot off of the brake pedal, and the driver-side door is opened. FCA chose not to equip the Class Vehicles with this safety override.

38. The Defective Shifter System thus violates several basic design guidelines for vehicle controls, such as: (1) be consistent; (2) controls and displays should function the way people expect them to function; (3) minimize what the user has to remember; and (4) operations that occur most often or have the greatest

impact on driving safety should be the easiest to perform.[6] The Defective Shifter System also violates several provisions of the Federal Motor Vehicle Safety Standards, including those concerning transmission shift position sequence, parking brake systems, and rollaway prevention.[7]

39.    No reasonable consumer expects to purchase a vehicle with a Defective Shifter System and associated safety risk that could expose her/him to collisions, vehicle rollaways, and potential injury and death. Further, Plaintiff and members of the Classes do not reasonably expect FCA to omit or conceal a defect in the Class Vehicles or omit or conceal a known safety risk that puts drivers, passengers and the public at risk. Plaintiff and members of the Classes had no reasonable way to know that Class Vehicles contained Defective Shifter Systems which were defective in materials, workmanship, design and/or manufacture and posed a significant safety risk.

40.    As alleged herein, Plaintiff and members of the Classes unknowingly purchased or leased vehicles that violate several basic design guidelines, suffer from manufacturing and/or design defects, violate federal regulations and, further,

_____

[6] *See* Exhibit C, *Preliminary Human Factors Design Guidelines for Driver Information Systems* (U.S. Department of Transportation, Federal Highway Administration, Washington D.C.) (1995) at 9-11, https://deepblue.lib.umich.edu /bitstream/handle/2027.42/1098/88512.0001.001.pdf ("DOT-FHA Design Guidelines").

[7] *See, e.g.*, Exhibit D, 49 C.F.R. §§ 571.102, 571.105, 571.114 (2017) ("Federal Motor Vehicle Safety Standards" or "FMVSS").

suffered diminished market value and other damages related to their purchase or lease of the Class Vehicles as a direct result of FCA's material misrepresentations and omissions regarding the standard, quality, or grade of the Class Vehicles and/or the existence of the Defective Shifter System and safety risk. The fact that the Class Vehicles contain the Defective Shifter System, which contains an unreasonably dangerous defect, is material to Plaintiff and members of the Classes because it diminishes the value of the Class Vehicles and presents a risk of injury and/or death to drivers and passengers of the Class Vehicles.

41. As a result of FCA's material misrepresentations and omissions, including its failure to disclose that the Class Vehicles incorporate the Defective Shifter System, which contains a known but concealed defect that makes the Class Vehicles unreasonably dangerous, and fails to include any safety override function to ensure the Class Vehicles are in the proper gear and will not unexpectedly rollaway or shift into unintended gears, FCA has caused Plaintiff and members of the Classes to suffer actual damages, including but not limited to diminished value of their vehicles, and has recklessly placed Plaintiff and members of the Classes, the occupants of the Class Vehicles, and the public at risk.

## III. FCA TOUTS SAFETY IN ITS MARKETING AND ADVERTISING

42. Maintaining that safety is purportedly one of the company's primary goals, FCA has specifically touted its "commitment" and "dedication" to

"transportation safety includ[ing] engineering active and passive features for diverse drivers and vehicle segments."[8] Amid worsening reliability ratings and recall investigations from NHTSA,[9] FCA's head of vehicle safety and regulatory compliance assured the market in 2014 that "safety considerations are baked into every component of every product we make."[10]

43. On its website, FCA represents that its "objective is to ensure vehicle quality and safety."[11] FCA informs consumers that its "vehicles meet the highest standard in terms of safety, ecological profile, driving performance and quality."[12] Specifically, FCA's website focuses on its purported rigorous testing and quality control:

> To ensure that FCA vehicles deliver maximum safety and quality to customers over their entire life, every mechanical and electronic

---

[8] Exhibit E, 2015 Sustainability Report, Vehicle Safety, FCA GROUP, http://reports.fcagroup.com/sustainability/2015/products-and-processes/product-innovation-and-responsible-mobility/vehicle-safety#start (last visited Jan. 25, 2017) ("2015 Sustainability Report").

[9] Exhibit F, Michael Wayland, *Quality Chief Leaves FCA Amid Recalls, Poor Reliability*, THE DETROIT NEWS (Oct. 29, 2014), http://www.detroitnews.com /story/business/autos/chrysler/2014/10/28/fiatchrysler-replaces-longtime-quality-chief/18052121/ ("2014 Detroit News Article").

[10] Exhibit G, Sandy Smith, *Sandy Says: Are You a Safety Advocate?*, EHS TODAY, (Feb. 4, 2016), http://ehstoday.com/safety-leadership/sandy-says-are-you-safety-advocate ("February 2016 EHS Today Article").

[11] Exhibit H, The Group, Brand Stories, FCA GROUP, http://www.fcagroup.com/ en-US/group/brand_stories/Pages/quality_lifecycle.aspx (last visited Jan. 26, 2017) ("FCA Group Brand Stories").

[12] *Id.*

component, body part and trim element is rigorously tested.  The designers work with a team of researchers during the testing phase to ensure vehicles meet the highest standards in terms of safety, ecological profile, driving performance and quality.[13]

44.     As to the Durango in particular, FCA advertises that it has "[o]ver 60 available safety & security features."[14] Under the heading "Bodyguards Always on Duty," FCA states that "with more than 60 standard and available safety and security features, you'll drive confidently in the Dodge Durango."[15] Adding that, at FCA, they "take your safety and security seriously."[16]

---

[13] *Id.*

[14] Exhibit I, Dodge, Vehicles, Durango, http://www.dodge.com/en/durango/ (last visited Jan. 25, 2017) ("Dodge Durango Safety and Security Screenshot 1") (capitalization modified).

[15] Exhibit J, Dodge, Vehicles, Durango, Safety & Security, http://www.dodge.com/ en/durango/safety_security/ (last visited Jan. 25, 2017) ("Dodge Durango Safety and Security Screenshot 2") (capitalization modified).

[16] *Id.*





45.     Going further, FCA asserts that it "designed the Dodge Durango to make you feel secure and confident behind the wheel . . . . That means trying to

avoid accidents before they happen."[17]   Ultimately claiming, however, that "the unexpected can occur and when it does, Durango has multiple features to help keep you safe and secure."[18]



46.    FCA also describes the Rotary Shifter installed in Durangos as "add[ing] a distinct level of interior refinement and fun for the driver."[19]

---

[17] *Id.*.

[18] *Id.*

[19] Exhibit I, (Dodge Durango Rotary Shifter Screenshot 1).



47.     FCA endorses similar safety messages for the Ram 1500.  Under the heading "We Stand Behind our Trucks," FCA states that "[d]ecades of rigorous safety, security and quality testing go into every model before the rubber hits the road."[20]  Noting that "[s]trength like this doesn't develop overnight . . . . Our Ram trucks have evolved from decades of rigorous testing and safety and security improvements to deliver one of our most advanced trucks on the road."[21]  FCA further attests that because the "Ram 1500 is equipped with some of the most

---

[20]  Exhibit K, Ram Trucks, Trucks & Vans, Ram 1500, Quality and Durability http://www.ramtrucks.com/en/ram_1500/durability/ (last visited Jan. 25, 2017) ("Ram 1500 Screenshot") (capitalization modified).

[21] *Id.*

advanced safety and security technology available . . . your Ram truck is engineered to help protect your most precious cargo."[22]





[22] *Id.*



48.     FCA made these repeated claims and advertisements touting its dedication to safety to boost Class Vehicle sales while knowing that it was selling approximately one million Class Vehicles equipped with the Defective Shifter System, which had a known but concealed defect with associated safety risks, and failed to include any safety override function to ensure Class Vehicles were in the proper gear and would not unexpectedly rollaway or shift into unintended gears.

## IV.   FCA KNEW ABOUT THE DEFECTIVE SHIFTER SYSTEM AND ASSOCIATED SAFETY RISKS

49.     FCA fraudulently, intentionally, negligently and/or recklessly omitted and concealed from Plaintiff and members of the Classes the defect in the Class Vehicles even though FCA knew or should have known of design and manufacturing defects in Class Vehicles and that the vehicles' design violated basic guidelines.

23

50.     Knowledge and information regarding the Defective Shifter System were in the exclusive and superior possession of FCA and its dealers, and that information was not provided to Plaintiff and members of the Classes. Based on pre-production testing, pre-production design failure mode effects analysis, production design failure mode effects analysis, early consumer complaints made to FCA's network of exclusive dealers and NHTSA, basic design guidelines, and Federal Motor Vehicle Safety Standards, *inter alia*, FCA was aware (or should have been aware) of the defect in the Defective Shifter System and fraudulently concealed the defect and safety risk from Plaintiff and members of the Classes.

51.     FCA knew, or should have known, that the defect in the Defective Shifter System and associated safety risk were material to owners and lessees of the Class Vehicles and were not known or reasonably discoverable by Plaintiff and members of the Classes before they purchased or leased Class Vehicles.

52.     Notwithstanding FCA's exclusive and superior knowledge of the Defective Shifter System, FCA failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and, on information and belief, continues to sell Ram 1500s and Durangos containing the defect through the 2017 model year.

53.     Consumers who purchased or leased Class Vehicles have filed several complaints with NHTSA reporting dangerous rollaway incidents, collisions, and

injuries and, also, detailing the defect in the Class Vehicles equipped with the Defective Shifter System.

54.    Federal law requires FCA to monitor defects which can cause a safety issue and report them within five (5) days. FCA regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defect in the Defective Shifter System through these complaints, *inter alia*.

55.    Below is a sample of consumer complaints made to NHTSA regarding Class Vehicle rollaway incidents and/or incidents where Class Vehicles did not remain in the desired gear:

### *2013-2016 Ram 1500*

- **Date Complaint Filed: December 5, 2013**

  **Date of Incident:** December 3, 2013
  **Component(s):** POWER TRAIN
  **NHTSA ID Number:** 10554951
  **Consumer Location:** MAUMEE, OH
  **Vehicle MakeModelModel Year(s):** RAM 1500 2014
  Crash: Yes
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C6RR7VT5ES****

**SUMMARY:**
THE NEW RAM TRUCKS USE A DIAL LIKE SHIFTER THAT CHRYSLER IS CALLING THE "ROTARY SHIFTER" IN WHICH THE DRIVER USES TO SELECT THE TRANSMISSION POSITION FROM PARK OR DRIVE. THE SYSTEM IS CAUSING SAFETY ISSUES IN CONFUSING DRIVERS

THINKING THAT THEY ARE LOOKING FOR THE WINDSHIELD WIPERS, VAN SPEED CONTROL, OR EVEN THINKING THAT THE VEHICLE IS IN PARK WHEN ACTUALLY IN DRIVE. WITH OUR INCIDENT THE DRIVER THOUGHT THE VEHICLE WAS SHIFTED INTO PARK HOWEVER IT WAS IN DRIVE. THE DRIVER STARTED TO GET OUT OF THE VEHICLE WHEN IT STARTED MOVING FORWARD CAUSING A COLLISION TO ANOTHER VEHICLE WITHIN OUR GARAGE LODGING THE DRIVERS HEAD IN THE TOP PORTION OF THE DOOR AND LEG IN THE LOWER CAUSING INJURY NOT TO MENTION DAMAGE TO EACH VEHICLE INVOLVED. THE DAMAGE COMBINED TO FOR BOTH VEHICLES IS WELL OVER $2,000 FOR A MINOR COLLISION AND ALSO TWO SEPARATE COLLISION CLAIMS ON OUR AUTO POLICY. CHRYSLER IS CALLING IT A DIVER ERROR AFTER REPORTING IT TO THEM UNDER CLAIM #24280455. WE FEEL AND AFTER TALKING WITH OTHERS IN THE PUBLIC IN JUST THIS SHORT AMOUNT OF TIME THAT IT IS A SAFETY ISSUE AS OTHERS IN OUR AREA ARE HAVING THE SAME ISSUE HOWEVER NO ONE WAS INJURED OR IN A COLLISION FROM OTHERS THAT WE HAVE TALKED WITH THUS FAR. *TR

- **Date Complaint Filed: August 5, 2015**

  **Date of Incident:** July 28, 2015
  **Component(s):** ELECTRICAL SYSTEM, UNKNOWN OR OTHER, POWER TRAIN
  **NHTSA ID Number:** 10746574
  **Consumer Location:** HOLLYWOOD, FL
  **Vehicle MakeModelModel Year(s):** RAM 1500 2015
  Crash: Yes
  Fire: No
  Number of Injuries: 1
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 3C6RR6KT6FG****

**SUMMARY:**
BOUGHT A BRAND NEW 2015 DODGE RAM 1500, THE FIRST WEEK I HAD AN ISSUE WITH ONE OF THE WINDOWS NOT GOING BACK UP, ABOUT A MONTH LATER I WAS DRIVING AND THE NEW KNOB SHIFTER, WENT INTO NEUTRAL BY ITSELF WHILE I WAS DRIVING. MEANT TO TAKE IT IN, BUT HAD BEEN SO BUSY WITH WORK, THAT I

26

WAS GOING TO WAIT UNTIL THE FIRST OIL CHANGE. I NOTED THOSE TWO ISSUES ON AN EMAIL REVIEW/SURVEY THAT DODGE HOUNDED ME TO FILL OUT. EXACTLY TWO MONTHS AFTER OWNING THE TRUCK ON JULY 28TH, THE SAME DAY I MADE MY SECOND PAYMENT, I WAS AT THE GARAGE AT WORK, LEFT THE TRUCK ON AND PUT IT IN PARK, GOT OUT OF THE CAR, CLOSED THE DOOR AND AS I WAS GETTING READY TO GO AROUND THE TRUCK TO GO INSIDE MY JOB, THE CAR STARTED TO BACK OUT BY ITSELF, I TRIED GETTING BACK INTO THE TRUCK TO STOP IT BUT UNFORTUNATELY, I FAILED, THE TRUCK ALMOST RAN ME OVER. THANKFULLY A CEMENT BEAM STOPPED THIS FROM HAPPENING.

- **Date Complaint Filed: April 17, 2016**

  **Date of Incident:** April 14, 2016
  **Component(s):** UNKNOWN OR OTHER
  **NHTSA ID Number:** 10859918
  **Consumer Location:** CHANDLER, AZ
  **Vehicle MakeModelModel Year(s):** RAM 1500 2016
  Crash: Yes
  Fire: No
  Number of Injuries: 1
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C6RR6LT9GS****

**SUMMARY:**
THURSDAY MORNING APRIL 14 I GOT INTO MY TRUCK TO GO TO WORK. PUT MY FOOT ON THE BRAKE AND START THE ENGINE. TURNED THE TRANSMISSION ROTARY KNOB ON THE DASH TO R AND BACK OUT OF THE GARAGE. THE ENGINE WAS STILL RUNNING AND PUT MY FOOT ON THE BRAKE TO GO TO P FOR PARK. AS I WAS GETTING OUT OF THE TRUCK AND TAKING MY FOOT OF THE BRAKE PEDAL. THE TRUCK STARTING MOVING FORWARD GOING BACK INTO THE GARAGE.

IT PINNED ME BETWEEN THE INSIDE OF THE FRONT AND THE GARAGE DOOR OPENING. I WAS ABLE TO REACH FOR THE KNOB AGAIN TO PUT IT BACK INTO REVERSE.

IT SMASHED THE LEFT FRONT DOOR IN AND TORE THE SIDE OF GARAGE DOOR OPENING. I HAD MAJOR BRUISING ON MY BODY. I AM VERY CONCERNED ABOUT DRIVING THIS VEHICLE DUE TO THIS ISSUE. I WANT TO BE REASSURED THAT THE VEHICLE IS SAFE BEFORE I DRIVE IT AGAIN. I HAVE BIG CONCERNS REGARDING THE ROTARY DESIGN FOR THE TRANSMISSION KNOB.

- **Date Complaint Filed: April 22, 2016**

  **Date of Incident:** March 21, 2016
  **Component(s):** UNKNOWN OR OTHER
  **NHTSA ID Number:** 10860998
  **Consumer Location:** KEKAHA, HI
  **Vehicle MakeModelModel Year(s):** RAM 1500 2014
  Crash: Yes
  Fire: No
  Number of Injuries: 1
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C6RR7KT8ES****

**SUMMARY:**
I HAD THE SAME ISSUE AS THE CURRENT RECALL FOR THE CARS AND SUV ROLLING AWAY WHILE IN PARK. I HAVE VIDEO FROM MY DASH CAMERA, THE DEALERSHIP AND CORPORATE OFFICE ALSO HAS THE VIDEO. THEY CLAIM I JUST LEFT IF IN DRIVE, BUT IN THE VIDEO YOU CAN CLEARLY HEAR THE TRUCK SHIFTED INTO PARK. THE VEHICLE STARTS ROLLING APPROXIMATELY 1 AND A HALF MINUTES AFTER I PARKED IT IN MY DRIVEWAY. I CAME BACK OUT OF MY HOUSE TO FIND THE TRUCK HAD SHIFTED INTO DRIVE AND HAD CRASHED UP AGAINST MY WORKBENCH IN MY CARPORT. THE TRUCK IS STILL CURRENTLY AT THE DEALERSHIP, AND THEY STILL CLAIM IT IS OPERATING NORMALLY. (THEY CANNOT DUPLICATE THE PROBLEM).

- **Date Complaint Filed: July 15, 2016**

  **Date of Incident:** July 4, 2016
  **Component(s):** POWER TRAIN
  **NHTSA ID Number:** 10884961
  **Consumer Location:** SWANTON, OH

**Vehicle MakeModelModel Year(s):** RAM 1500 2015
Crash: No
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Chrysler (FCA US LLC)
**Vehicle Identification No. (VIN):** 1C6RR7GT7FS****

**SUMMARY:**
TL* THE CONTACT OWNS A 2015 RAM 1500. AFTER THE VEHICLE WAS PLACED IN PARK AND THE CONTACT EXITED, IT BEGAN TO ROLL BACK. THE VEHICLE WAS FOUND IN A POND. A POLICE REPORT WAS FILED. THE VEHICLE WAS TOWED OUT OF THE POND TO A TOW YARD. UPON INSPECTION, IT WAS DISCOVERED THAT THE VEHICLE WAS STILL REGISTERED IN PARK. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 20,000.

- **Date Complaint Filed: November 15, 2016**

  **Date of Incident:** October 3, 2016
  **Component(s):** POWER TRAIN
  **NHTSA ID Number:** 10926262
  **Consumer Location:** OLALLA, WA
  **Vehicle MakeModelModel Year(s):** RAM 1500 2013
  Crash: Yes
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C6RR7GG3DS****

**SUMMARY:**
THE TRUCK SHIFTED IT SELF INTO GEAR WHILE RUNNING IT WAS IN PARK I GOT OUT AND WALKED AWAY ONCE I WAS 50' AWAY I HEARD THE TRUCK SHIFT AND TURNED JUST IN TIME TO SEE IT START ROLLING AWAY. ONCE I RECOVERED MY TRUCK FROM THE BOTTOM OF THE HILL I THOUGH MAYBE I LEFT IT IN GEAR AND GOT OUT UNLIKELY I HAVE OWNED THE TRUCK FOR THREE YEARS. I ATTEMPTED TO SEE IF IT WOULD REPEAT I COULD NOT GET IT TO SIT

ON MY DRIVEWAY IN GEAR WITH OUT ROLLING AWAY IMMEDIATELY WHILE IN GEAR. MY DRIVE WAY IS STEEP AND THIS DID CONSIDERABLE DAMAGE TO THE TRUCK AND PROPERTY. THE TRUCK SHIFTED ITSELF IN TO GEAR ONCE BEFORE WHEN I FIRST PURCHASED THE TRUCK BUT AT THE TIME I WROTE IT OFF TO MY CONFUSION WITH THE DIAL SHIFTER AND THE TRUCK ONLY WENT A FEW FEET INTO A CURB BLOCK. NOW THAT THIS HAS HAPPENED I RECONSIDERED. I WILL NOT BE LETTING MY TRUCK RUN ANY MORE WITHOUT ME BEHIND THE WHEEL.

### *2014-2016 Dodge Durango*

- **Date Complaint Filed: July 30, 2015**

  **Date of Incident:** May 31, 2015
  **Component(s):** ELECTRICAL SYSTEM
  **NHTSA ID Number:** 10744809
  **Consumer Location:** CONROE, TX
  **Vehicle MakeModelModel Year(s):** Dodge Durango 2014
  Crash: Yes
  Fire: No
  Number of Injuries: 0
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C4SDHCT3EC****

**SUMMARY:**
I STARTED MY DODGE DURANGO WITH REMOTE START TO COOL THE CAR DOWN BEFORE MY FAMILY GOT IN THE VEHICLE. MY WIFE, SISTER-IN-LAW, AND BOYS GOT IN THE VEHICLE AS I WALKED TOWARDS THE DRIVER SIDE. MY WIFE REACHED OVER FROM THE PASSENGER SIDE TO START THE VEHICLE AND TURN ON ALL ELECTRICAL COMPONENTS. ONCE THE START BUTTON WAS PRESSED THE VEHICLE DISENGAGED FROM PARK AND STARTED MOVING IN REVERSE REACHING APPROXIMATELY 20MPH UNTIL MY WIFE JUMPED ON TO THE DRIVER SEAT AND WAS ABLE TO HIT THE BRAKES. THE SHIFT WAS IN THE PARK POSITION SO ALL SHE COULD DO WAS TURN OFF THE VEHICLE. THANKFULLY, THERE WAS NO INJURY DONE TO MY FAMILY OR PEDESTRIANS. MY DURANGO DID HIT TWO PARKED VEHICLES THAT MY INSURANCE PAID TO REPAIR. I CALLED CHRYSLER TO FILE A COMPLAINT THAT SAME DAY AND

THEY REQUESTED FOR THE VEHICLE TO BE DROPPED OFF AT A DODGE DEALERSHIP FOR INVESTIGATION. A MONTH AFTER THE INCIDENT I RECEIVE A LETTER FROM CHRYSLER STATING THAT NO ELECTRICAL PROBLEM WAS FOUND AND THE VEHICLES OPERATION MEETS CHRYSLER STANDARDS.

- **Date Complaint Filed: September 5, 2015**

  **Date of Incident:** September 5, 2015
  **Component(s):** ELECTRICAL SYSTEM, POWER TRAIN
  **NHTSA ID Number:** 10761819
  **Consumer Location:** SUWANEE, GA
  **Vehicle MakeModelModel Year(s):** Dodge Durango 2015
  Crash: Yes
  Fire: No
  Number of Injuries: 2
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C4RDJEG2FC****

**SUMMARY:**
AFTER BACKING OUT OF GARAGE, I PLACED THE VEHICLE IN PARK WITH ENGINE RUNNING WHILE I WALKED BACK INTO GARAGE. NOTE VEHICLE WAS PARKED ON A SLOPE. EMERGENCY BRAKE WAS NOT SET. WHILE IN GARAGE, I NOTICED VEHICLE WAS ROLLING DOWN DRIVEWAY. I WAS KNOCKED DOWN BY DRIVERS SIDE DOOR WHILE TRYING TO GET IN TO APPLY BRAKE. THE VEHICLE THEN ROLLED OVER MY MAILBOX, ACROSS STREET, OVER NEIGHBOR'S MAILBOX AND STOPPED WHEN IT HIT A TREE. MY WIFE WAS IN CAR SO KNOWS THAT REAR PARKING SENSORS NEVER CHIMED TO INDICATE IT WAS ABOUT TO HIT SOMETHING WHICH I BELIEVE CONFIRMS THAT THE CAR WASN'T STILL IN REVERSE AFTER BACKING OUT OF GARAGE. THE AIR BAGS WERE NOT DEPLOYED. I BELIEVE THAT VEHICLE SLIPPED OUT OF PARK. IT WAS NOT MOVING WHEN I FIRST GOT OUT. MY INJURIES FROM BEING KNOCKED TO THE GROUND AND HERS FROM BEING IN THE DRIVERS SEAT BOTH FEEL THEY DIDN'T WARRANT EMERGENCY ROOM TREATMENT BUT WILL GET TREATMENT IF PAIN PERSISTS.

- **Date Complaint Filed: September 16, 2015**

   **Date of Incident:** July 28, 2015
   **Component(s):** POWER TRAIN
   **NHTSA ID Number:** 10764187
   **Consumer Location:** ROSCOE, IL
   **Vehicle MakeModelModel Year(s):** Dodge Durango 2014
   Crash: Yes
   Fire: No
   Number of Injuries: 0
   Number of Deaths: 0
   **Manufacturer:** Chrysler (FCA US LLC)
   **Vehicle Identification No. (VIN):** 1C4RDJDG3EC****

**SUMMARY:**
BACKED CAR OUT OF GARAGE, PUT IN PARK ON INCLINED
DRIVEWAY TO RETRIEVE A FORGOTTEN ITEM FROM HOUSE. WAS
GONE FOR ABOUT 1 MINUTE. UPON RETURNING CAR WAS ACROSS
THE CUL DE SAC IN THE NEIGHBORS FRONT YARD. WENT TO
NEIGHBORS YARD TO RETRIEVE CAR AND LOOK FOR DAMAGE. CAR
WAS STILL IN PARK AS THE DIAL TRANSMISSION WAS ILLUMINATED
TO P, BUT CAR WAS NO LONGER RUNNING BUT LIGHTS AND RADIO
WERE STILL ON. CLEANED DIRT AND GRASS OUT OF TAIL PIPE AS IT
HAD CRASHED THRU NEIGHBORS DITCH. STARTED CAR AND DROVE
BACK TO HOUSE, TURNED OFF ENGINE AND PUT ON EMERGENCY
BREAK, CALLED HUSBAND OUT OF THE HOUSE TO LOOK
UNDERNEATH FOR DAMAGE. FRONT END DAMAGE ON THE
PASSENGER SIDE AND ALSO REAR BUMPER DAMAGE. CALLED
DODGE AND FILED CLAIM. CAR WAS TAKEN TO LOCAL DEALER WHO
CALLED DODGE AND WERE ADVISED TO CHECK FOR ANY GUNK OR
DEBRI IN THE OIL PAN, NONE FOUND SO THEY WERE ADVISED TO
DROP THE TRANSMISSION AND CHECK THE COMPONENTS, WHICH
RESULTED IN THE DISCOVERY OF A DEFECTIVE VALVE BODY. PART
WAS REPLACED AND DAMAGED SUPPOSEDLY FIXED. LESS THAN
TWO MONTHS LATER, TRANSMISSION IS SLAMMING FROM 2ND GEAR
TO 3RD GEAR AND LARGE CLUNK HEARD WHEN TRANSMISSION
SHIFTS FROM 2ND GEAR TO FIRST GEAR, CALLED DODGE AND FILE
ANOTHER CLAIM AND TAKING BACK TO DEALER. I HAVE READ
OTHER COMPLAINTS ABOUT UNATTENDED VEHICLE ROLL AWAYS
FOR DODGE AND JEEP USING THE SAME NEW DIAL TRANSMISSION

RESULTING IN PROPERTY DAMAGE AND MINOR INJURIES. I AM VERY CONCERNED THAT SOMEONE MAY BE SERIOUSLY INJURED OR KILLED IF THIS IS NOT ADDRESSED BY DODGE. I DO ALSO HAVE THIS ALL ON VIDEO AS WE HAVE AN OUTDOOR SECURITY SYSTEM THAT I AM WILL TO SEND TO ANYONE WHO IS TRYING TO DISPUTE THIS SAME SAFETY ISSUE WITH DODGE. IT IS EVEN TIMED SECOND BY SECOND IN THE FOOTAGE AND YOU CAN SEE EVERY DOOR IN MY CAR TO PROVE THAT NO ONE ELSE WAS IN THE CAR WHEN THIS HAPPENED.

- **Date Complaint Filed: May 23, 2016**

  **Date of Incident:** May 17, 2016
  **Component(s):** UNKNOWN OR OTHER
  **NHTSA ID Number:** 10870288
  **Consumer Location:** TUNKHANNOCK, PA
  **Vehicle MakeModelModel Year(s):** Dodge Durango 2015
  Crash: Yes
  Fire: No
  Number of Injuries: 1
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C4RDJDG0FC****

**SUMMARY:**
VEHICLE WAS IN PARK POSITION ON A SIDE ROAD. IT WAS STILL RUNNING SINCE WE WEREN'T GOING TO REMAIN PARKED THERE EXCEPT FOR A FEW MINUTES. I WAS TAKING PICTURES OF MY SON BEFORE HIS BAND CONCERT NEAR THE SCHOOL WHERE THE VEHICLE WAS PARKED. IT REMAINED STATIONARY/PARKED FOR UP TO 4 MINUTES AT WHICH POINT IN TIME IT STARTED ROLLING DOWN THE INCLINED ROAD UNATTENDED. HAVE NO IDEA WHAT PART OF THE CARE MALFUNCTIONED TO SWITCH IT OUT OF PARK. SO UNKOWN.

- **Date Complaint Filed: July 11, 2016**

  **Date of Incident:** July 10, 2016
  **Component(s):** POWER TRAIN
  **NHTSA ID Number:** 10883952
  **Consumer Location:** SALEM, OH

**Vehicle MakeModelModel Year(s):** Dodge Durango 2014
Crash: No.
Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Chrysler (FCA US LLC)
**Vehicle Identification No. (VIN):** 1C4RDJDG3EC****

**SUMMARY:**
I DROVE INTO A STORE PARKING LOT, PUT MY DURANGO IN PARK, THE CAR WAS STILL RUNNING AS MY ELDERLY FATHER WAS IN THE PASSENGER SIDE AND MY 15 YEAR OLD DAUGHTER WAS IN THE BACK. WHEN EXITING THE STORE AFTER LESS THAN 3 MINUTES IN THERE, I NOTICED MY DURANGO WAS NOW IN THE MIDDLE OF THE PARKING LOT AND MY FATHER WAS IN THE DRIVERS SIDE. UPON APPROACHING THE VEHICLE, MY FATHER TOLD ME THAT THE DURANGO STARTED ROLLING BACKWARDS. THE DURANGO WAS CLEARLY IN THE 'PARKED' POSITION WITH THE "P" LIT UP ON THE DIAL. THE DURANGO HAD MOVED A GOOD 6-10 FEET BEFORE MY FATHER WAS ABLE TO JUMP TO THE OTHER SIDE AND STOP IT BY PRESSING THE BREAK. UPON RETURNING HOME I CHECKED ONLINE FOR OTHER COMPLAINTS SUCH AS THIS AND FOUND THAT THE NHTSA WAS INVESTIGATING CLAIMS OF THIS SAME THING HAPPENING IN 2014 DURANGO'S. THIS MORNING I CALLED MY DEALERSHIP AND THE SERVICE GUY TOLD ME THAT THERE WAS NO RECALL ON THE 2014 DURANGO'S (ONLY OTHER DODGE VEHICLES WITH THIS SAME EXACT PROBLEM) HE ADVISED ME THAT THE COULD TAKE A LOOK AT IT BUT THAT THERE WAS NO 'FIX' FOR IT. SO I WILL BE TAKING IT TO THE DEALERSHIP ON 7-15-16 FOR THEM TO 'LOOK' AT IT. AT THIS POINT I FEEL THAT I HAVE AN UNSAFE VEHICLE AND THERE IS NOTHING THEY CAN DO ABOUT IT!

- **Date Complaint Filed: August 16, 2016**

  **Date of Incident:** July 23, 2016
  **Component(s):** POWER TRAIN, VEHICLE SPEED CONTROL
  **NHTSA ID Number:** 10896337
  **Consumer Location:** SOUTH, NY
  **Vehicle MakeModelModel Year(s):** Dodge Durango 2015
  Crash: No

34

Fire: No
Number of Injuries: 0
Number of Deaths: 0
**Manufacturer:** Chrysler (FCA US LLC)
**Vehicle Identification No. (VIN):** 1C4RDJDG8FC****

**SUMMARY:**
VEHICLE WILL DRIVE AWAY UNATTENDED IF YOU FORGET TO TURN
THE "TRANSMISSION DIAL"..... WHEN THE CAR IS IN DRIVE AND YOU
STOP AND PRESS THE IGNITION BUTTON (THINKING YOU ARE
PUTTING THE CAR IN PARK AND/OR TURNING IT OFF, AND THEN GET
OUT OF THE CAR, THE CAR REMAINS IN DRIVE AND WILL DRIVE
AWAY. WHEN YOU PRESS THE BUTTON, THE CAR MAKES A RINGING
SOUND AND BOTH ME AND MY WIFE AND THOUGHT THE CAR WAS IN
PARK. WHEN I GOT OUT OF THE CAR, BECAUSE I FORGOT TO TURN
THE TRANSMISSION DIAL TO PARK, THE CAR BEGAN TO ROLL AWAY
WITH MY WIFE AND CHILDREN STILL IN THE VEHICLE. UNLIKE ALL
OTHER CARS I HAVE HAD THAT HAD ELECTRONIC TRANSMISSIONS
WHICH PUT THE CAR IN PARK IF YOU TURN THEM OFF AND/OR OPEN
THE DOOR WHEN THE CAR IS NOT MOVING, THE DURING WILL
SIMPLY DRIVE OFF IN THE DIRECTION ITS IS AIMED. THIS CAR NEEDS
TO PUT ITSELF INTO PARK IN THESE SITUATIONS. I HAVE A BMW
THAT WILL NOT/CANNOT DRIVE AWAY LIKE THIS. IT IS EXTREMELY
DANGEROUS!!!! I ASKED THE DEALER IF THERE WAS A WAY TO STOP
THIS AND I WAS TOLD THEY ARE AWARE OF A SIMILAR PROBLEM ON
THE JEEP GRAND CHEROKEE. HOWEVER, I AM TOLD THERE IS NO RE-
PROGRAMMING FIX YET. SOMEONE IS GOING TO BE KILLED BY THIS
DEFECT EVENTUALLY.

- **Date Complaint Filed: August 24, 2016**

   **Date of Incident:** August 10, 2016
   **Component(s):** POWER TRAIN
   **NHTSA ID Number:** 10898192
   **Consumer Location:** BRISTOW, VA
   **Vehicle MakeModelModel Year(s):** Dodge Durango 2016
   Crash: Yes
   Fire: No
   Number of Injuries: 0
   Number of Deaths: 0

**Manufacturer:** Chrysler (FCA US LLC)
**Vehicle Identification No. (VIN):** 1C4RDJEG5GC****

**SUMMARY:**

COMPUTER/TRANSMISSION ISSUES. CAR BROKE DOWN AND COULD NOT PUT IN PARK BECAUSE THE COMPUTER THOUGHT MY SPEED WAS TOO HIGH EVEN THOUGH I WAS STANDING STILL. ONCE THE CAR WAS TOWED TO THE DEALER IT MOVED FORWARD WHILE IT WAS IN PARK. (VIDEO EVIDENCE) IN A PREVIOUS INCIDENT THE CAR WAS PLACED IN PARK AND NOT TURNED OFF. I EXITED THE VEHICLE WITH THE ENGINE STILL RUNNING. THE CAR IDLED FORWARD ON ITS OWN DAMAGING A GARAGE AND THE CAR ITSELF. INITIALLY, I THOUGHT THIS WAS DUE TO ME NOT PUTTING THE CAR IN PARK BUT NOW I DON'T BELIEVE THIS WAS THE CASE. I BELIEVED THE CAR TO BE IN PARK BUT THE ELECTRONIC TRANSMISSION CONTROL KEPT THE DID NOT RECOGNIZE THAT VEHICLE WAS IN PARK.

- **Date Complaint Filed: August 26, 2016**

  **Date of Incident:** August 13, 2016
  **Component(s):** POWER TRAIN
  **NHTSA ID Number:** 10898999
  **Consumer Location:** CABOT, AR
  **Vehicle MakeModelModel Year(s):** Dodge Durango 2014
  Crash: Yes
  Fire: No
  Number of Injuries: 1
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C4RDHEG5EC****

**SUMMARY:**

TL* THE CONTACT OWNED A 2014 DODGE DURANGO. WHEN THE VEHICLE WAS PLACED IN PARK, IT CONTINUED TO ROLL FORWARD. THE CONTACT INSPECTED THE VEHICLE AND NOTICED THAT THE SHIFTER WAS STILL IN PARK. THE VEHICLE CRASHED INTO A TREE. THE AIR BAGS DID NOT DEPLOY. A POLICE REPORT WAS NOT FILED. THE CONTACT SUSTAINED INJURIES TO THE RIGHT EYEBROW, RIGHT EYE, RIGHT WRIST, ELBOW, KNEE, AND FOREHEAD. MEDICAL ATTENTION WAS REQUIRED. UPON ARRIVAL AT THE DEALER, THE

VEHICLE WAS STILL IN THE PARK GEAR AND THE WHEELS WHERE MOVING. THE VEHICLE WAS TOWED TO THE INSURANCE BODY SHOP WHERE IT WAS DETERMINED THAT THE VEHICLE WAS DESTROYED. THE FAILURE MILEAGE WAS APPROXIMATELY 14,300.

- **Date Complaint Filed: September 27, 2016**

  **Date of Incident:** April 11, 2015
  **Component(s):** STRUCTURE, POWER TRAIN
  **NHTSA ID Number:** 10910068
  **Consumer Location:** OKLAHOMA CITY, OK
  **Vehicle MakeModelModel Year(s):** Dodge Durango 2014
  Crash: No.
  Fire: No
  Number of Injuries: 1
  Number of Deaths: 0
  **Manufacturer:** Chrysler (FCA US LLC)
  **Vehicle Identification No. (VIN):** 1C4RDJDG5EC****

**SUMMARY:**
I BACKED THE VEHICLE OUT OF THE GARAGE ONTO THE DRIVEWAY, THEN PUT IT IN PARK. I LEFT THE ENGINE RUNNING AND EXITED THE VEHICLE TO WALK IN THE GARAGE. I WAS ALREADY IN THE GARAGE AND TURNED BACK TO SEE THE VEHICLE WAS MOVING FORWARD. I TRIED TO GET BACK IN TO STOP THE CAR AND WAS TRAPPED BETWEEN THE DOOR AND THE CAR. UNABLE TO STOP THE VEHICLE, IT CONTINUED FORWARD, SWIPING THE CENTER GARAGE BEAM AND CRUSHING ME.

**V.   NHTSA OPENS INVESTIGATION INTO DEFECTIVE SHIFTER SYSTEM IN CLASS VEHICLES AFTER RELATED ROLLAWAY RECALL CONCERNING OTHER FCA VEHICLES WITH SHIFT-BY-WIRE TRANSMISSION SYSTEMS**

56.   As stated above, on December 16, 2016, NHTSA-ODI opened

Preliminary Evaluation PE 16-014 to investigate incidents, crashes, and injuries

caused by the Defective Shifters in the Class Vehicles:

The Office of Defects Investigation (ODI) has identified 43 complaints alleging vehicle rollaway from a parked position in model year (MY) 2013-2016 Ram 1500 and MY 2014-2016 Dodge Durango. These subject vehicles are equipped with an electronically shifted transmission and electronic rotary control for driver gear selections. The reports alleged that the unintended motion occurred after the driver moved the transmission gear selector to Park and exited the vehicle. Nine injuries have been alleged in eight reports, 25 crashes are alleged. Thirty-four of the reports alleged that the vehicle was moving while the shifter indicated that it was in the park position. Many of the incidents alleged the engine was running, however it was noted as off in a few cases. [23]

57.     NHTSA estimates that 1,000,000 vehicles will be affected by this investigation.[24]

58.     This investigation comes on the heels of an NHSTA-ODI probe that led to a massive recall and the above-mentioned lawsuit, *see In Re: FCA US LLC Monostable Electronic Gearshift Litigation*, MDL. No. 2744, addressing rollaway-related issues experienced by drivers in different FCA vehicles equipped with faulty monostable shifter systems.

## VI.   FCA HAS NOT PROVIDED A REMEDY WITHIN A REASONABLE TIME

59.     Although FCA has long known about the Defective Shifter System, the Company has failed to notify Plaintiff and members of the Classes of the defect, or provide a remedy or replace the Defective Shifter System within a reasonable time.

---

[23] *See* Exhibit B (ODI Resume).

[24] *Id.*

60.     FCA's foot-dragging with respect to notifying its customers of the dangerous Defective Shifter System, and failure to take steps to correct it, is unfortunately business as usual for FCA. As reported by *The New York Times* on June 21, 2016, Center for Auto Safety Executive Director Clarence Ditlow believes FCA's investigation and recall of its faulty monostable shifters took too long— noting, "[t]here was no sense of urgency on Chrysler's part or N.H.T.S.A.'s part given the potential for death or injury."[25]

61.     This is not the first time FCA has been criticized for dragging its feet with regard to vehicle safety recalls. NHTSA has "publicly chastised [FCA], which acknowledged delaying recalls in almost two dozen cases going back to 2013 and affecting millions of vehicles."[26]   NHTSA head, Mark Rosekind, had voiced the agency's "concerns about slow completion rates, slow or inadequate notifications to consumer, faulty remedies, improper actions by dealers any more"[27] related to 20 separate recalls that affected 10 million vehicles. Mr. Rosekind further stated that FCA's conduct at that time "represent[ed] a significant failure to meet a

---

[25] Exhibit L, Christopher Jensen, *Anton Yelchin's Death Highlights a Known Issue With Jeeps*, THE NEW YORK TIMES (June 21, 2016), http://www.nytimes.com /2016/06/22/business/anton-yelchins-death-highlights-a-known-issue-with-jeeps.html?_r=0 ("2016 New York Times Article").

[26] *Id.*

[27] Exhibit M, Brett Snavely, *NHTSA Questions FCA recall response rate in 20 recalls,* DETROIT FREE PRESS, May 18, 2015, http://www.freep.com/story/money/cars/chrysler/2015/05/18/fca-fiat-chrysler-jeep-recalls-nhtsa-pubic-hearing/27531875/ ("May 2015 Detroit Free Press Article").

manufacturer's safety responsibilities."[28] In response, FCA promised to speed up its recalls and agreed to pay penalties of as much as $105 million. As described by FCA, "[i]n 2015, FCA US continued to focus efforts on refining recall processes and procedures and entered into a consent order with the National Highway Traffic Safety Administration (NHTSA) to undertake specific actions to improve its recall execution."[29] Mr. Ditlow stated that the consent order was "totally aimed at making Chrysler do a better job on recalls in the future."[30]

62.     But this case evidences the fact that little has changed. FCA is still putting profits ahead of safety. FCA has known of the safety risks associated with the Defective Shifter System since shortly after the Class Vehicles entered the market, and has failed to notify Plaintiff and the Classes of the defect and/or remedy the defect.

## VII.  THE DEFECTIVE SHIFTER SYSTEM DEPRIVES CLASS MEMBERS OF THE BENEFIT OF THEIR BARGAIN

63.     Plaintiff and Class members purchased or leased Class Vehicles based upon a reasonable assumption and based on FCA's warranties that the vehicles were safe and free of defects. However, the Class Vehicles delivered by FCA were not those for which Plaintiff and Class members bargained. Rather, the Class

---

[28] Exhibit L (2016 New York Times Article).

[29] Exhibit E (2015 Sustainability Report).

[30] Exhibit L (2016 New York Times Article).

Vehicles suffered from a common defect—the Defective Shifter System. Had Plaintiff and Class members known of the defect, they would have either (1) paid substantially less for the vehicles; (2) required an immediate remedy that restored the vehicles to the conditions bargained for; or (3) not purchased or leased the Class Vehicles.

64.    As a result of the disparity between the quality of the Class Vehicles negotiated for and the Class Vehicles actually received, Plaintiff and Class members suffered economic harm. This economic harm can be quantified as the economic value of an effective remedy that restores vehicles to their expected conditions (or the economic harm from the lack of that remedy) and, also, the discount that Plaintiff and Class members would have required to accept the Class Vehicles in their actual condition.

65.    A successful repair of the Class Vehicles would not fully compensate Plaintiff and Class members. Through its concealment of the Defective Shifter System, FCA deprived Plaintiff and Class members of the value of a fully functional vehicle for at least some portion of ownership. Furthermore, Plaintiff and Class members must monitor the status of their Class Vehicles' defects and will incur time and expense in order to execute repairs. Further, FCA has appropriated economic welfare from Plaintiff and Class members by avoiding or delaying the expense necessary to remedy the Defective Shifter System while

41

forcing Plaintiff and Class members to subsidize them by unknowingly assuming the safety risk associated with driving the Class Vehicles containing the Defective Shifter System.

66.    Plaintiff and Class members paid premiums to purchase the Class Vehicles as a result of the brand, reliability, value, and safety representations made by FCA. A car purchased or leased with the reasonable expectation that it is safe and reliable as advertised is worth more than a car known to be subject to the risk of dangerous rollaway incidents. Class members were harmed from the day they drove their Class Vehicle off the lot because they did not get what they paid for—a car that was well-designed and safe to operate.

67.    As a direct result of FCA's misrepresentations and omissions, Plaintiff and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain. Plaintiff and Class members paid a premium for the Class Vehicles which were advertised as safe and reliable, and received Class Vehicles that contained a known but concealed defect. FCA was unjustly enriched because it obtained and retained monies paid by Plaintiff and Class members who paid a price for the Class Vehicles that was higher than the value of the cars they received in return.

68.    The announcement of the NHTSA investigation into the Defective Shifter System has also led to decreased value in the Class Vehicles. The loss in

value is particularly acute and affects Class members because they do not want to own unsafe cars that might roll away and crush them or members of their family. Safety, reliability, and quality of design are at the core of FCA's marketing efforts and a driving factor in purchase decisions. Class members who want to sell their Class Vehicles cannot without incurring substantial losses. In addition, Class members—unlike FCA—are concerned about selling their Class Vehicles to another driver who may experience a dangerous rollaway incident.

69.    Also, many Class members purchased expensive extended warranties for their Class Vehicles, intending to own the vehicles for many years beyond the initial warranty. However, as a result of the Defective Shifter System, Class members no longer want to own the Class Vehicles and when they sell them, in addition to losses from the cars being worth much less as a result of the defect, they will lose the value of the extended warranties that they purchased.

70.    As a result of FCA's unfair, deceptive, and/or fraudulent business practices and its failure to disclose that the Defective Shifter System is unsafe and defectively designed, owners and/or lessees of the Class Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the defect at the time they purchased or leased their Class Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

71.     Any applicable statute of limitations has been tolled by FCA's knowing and active concealment of the Defective Shifter System and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and members of the Classes were deceived regarding the Defective Shifter System and could not reasonably discover the defect or FCA's deception with respect to the defect.

72.     Plaintiff and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that FCA was concealing a defect and/or that the Class Vehicles contained a Defective Shifter System and corresponding safety hazard. As alleged herein, the existence of the Defective Shifter System and corresponding safety hazard were material to Plaintiff and members of the Classes at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Classes could not have discovered through the exercise of reasonable diligence that FCA was concealing the defect in the Defective Shifter System.

73.     All applicable statutes of limitation have been tolled by FCA's knowing, active, and ongoing affirmative concealment of the facts alleged herein including the Defective Shifter System and safety hazard.  Plaintiff and members

44

of the Classes reasonably relied on FCA's knowing, active and ongoing affirmative concealment.

74.    At all times, FCA was and is under a continuous duty to disclose to Plaintiff and members of the Classes the true standard, quality, character, nature and grade of the Class Vehicles and to disclose the Defective Shifter System and associated safety hazard.   Instead, FCA actively concealed the true standard, quality, character, nature and grade of the Class Vehicles and knowingly made misrepresentations and omissions about the quality, reliability, safety, characteristics and performance of the Class Vehicles.   Plaintiffs and members of the Class Vehicles reasonably relied on FCA's knowing and affirmative misrepresentations and concealment of the facts alleged herein.

75.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and FCA's fraudulent concealment; further, FCA is estopped from relying on any statutes of limitations in defense of this action.

## CLASS ALLEGATIONS

76.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and the following proposed classes:

**Nationwide Class**

All persons or entities that purchased or leased a 2013-2016 Ram 1500 or 2014-2016 Dodge Durango.

**California Sub-Class**

All persons or entities that purchased or leased a 2013-2016 Ram 1500 or 2014-2016 Dodge Durango in the State of California and all persons entities in the State of California who purchased, leased, or own a 2013-2016 Ram 1500 or 2014-2016 Dodge Durango.

**Song-Beverly Sub-Class**

All persons or entities that purchased or leased a 2013-2016 Ram 1500 or 2014-2016 Dodge Durango in the State of California.

77.    Excluded from the Class are individuals who have personal injury claims resulting from the defectively designed Defective Shifter System in their Class Vehicles. Also excluded from the Class are FCA, its employees, officers and directors, FCA dealers, Class counsel and their employees, all persons who make a timely election to be excluded from the Class, and the judge to whom this case is assigned and his/her immediate family.

78.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

79.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

80.     **Numerosity**.     Federal Rule of Civil Procedure 23(a)(1):     The members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. Approximately 1,000,000 Class Vehicles have been sold in the United States. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

81.     **Commonality and Predominance**.  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a.     Whether FCA engaged in the conduct alleged herein;

   b.     Whether FCA designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

   c.     Whether the Defective Shifter System in the Class Vehicles contains a safety defect;

   d.     Whether FCA knew about the defect in the Defective Shifter System and, if so, how long FCA has known of it;

   e.     Whether FCA designed, manufactured, marketed, and distributed the Class Vehicles with a Defective Shifter System;

f.     Whether FCA's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

g.     Whether Plaintiff and the other Class members overpaid for their Class Vehicles;

h.     Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

i.     Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

82.    **Typicality**.  Federal Rule of Civil Procedure 23(a)(3):  Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through FCA's wrongful conduct as described above.

83.    **Adequacy**.  Federal Rule of Civil Procedure 23(a)(4):  Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

84.    **Declaratory and Injunctive Relief**.  Federal Rule of Civil Procedure 23(b)(2):  FCA has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

85.   **Superiority**.   Federal Rule of Civil Procedure 23(b)(3):   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against FCA, so it would be impracticable for the members of the Class to individually seek redress for FCA's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, ET SEQ.)
### ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY,
### ON BEHALF OF THE CALIFORNIA SUB-CLASS

86.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

87.    Plaintiff brings this Count on behalf of the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

88.    Plaintiff satisfies the Magnuson-Moss Warranty Act jurisdictional requirement because Plaintiff alleges diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

89.    Plaintiff and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

90.    FCA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

91.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

92.    The Magnuson-Moss Warranty Act provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

93.    FCA provided Plaintiff and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). Specifically, in connection with the purchase or lease of each one of its new vehicles, FCA provides an express Basic Limited Warranty ("BLW") for a period of three years or 36,000 miles, whichever occurs first. This BLW exists to cover defects in "material, workmanship or factory preparation." FCA also provides a powertrain

limited warranty that covers the engine and transmission, including the shifter assembly, for five years or 100,000 miles, whichever occurs first, for the Class Vehicles.

94.     Under warranties provided to members of the Classes, FCA promised to repair or replace covered defective components, including the Defective Shifter System, at no cost to owners and lessees of the Class Vehicles. As alleged herein, FCA breached these warranties.

95.     Plaintiff and members of the Classes experienced the defect in the Defective Shifter System within the warranty periods, but FCA failed to inform Plaintiff and members of the Classes of the existence of the Defective Shifter System and associated safety hazard and, also, failed to provide a suitable repair or replacement of the Defective Shifter System free of charge within a reasonable time.

96.     Any attempt by FCA to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, FCA's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in FCA's warranty periods are also unconscionable and inadequate to protect Plaintiff and members of the Classes. Among other things, Plaintiff and members of the Classes did not determine these time limitations, the terms of which

unreasonably favored FCA. A gross disparity in bargaining power existed between FCA and members of the Classes, and FCA knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

97.     The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

98.     FCA breached these warranties by misrepresenting the standard, quality, or grade of the Class Vehicles and, also, by failing to disclose and fraudulently concealing the existence of the unreasonably dangerous defect in the Defective Shifter System. Without limitation, the Class Vehicles share a common defect that causes the Class Vehicles to fail to operate as represented by FCA and, further, presents a safety risk.

99.     Affording FCA a reasonable opportunity to cure its breach of warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, FCA knew, or was reckless in not knowing, of the material misrepresentations and omissions concerning the standard, quality, or grade of the Class Vehicles and the existence of the Defective Shifter System and associated safety risk, but failed to repair or replace the Defective Shifter System and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate

and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford FCA a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

100.    Plaintiff and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to FCA. Thus, Plaintiff and members of the Classes have not re-accepted their Class Vehicles by retaining them.

101.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

102.    Plaintiff, individually and on behalf of members of the Classes, seeks all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT II
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)
## ON BEHALF OF THE CALIFORNIA SUB-CLASS

103.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

104.    Plaintiff brings this Count on behalf of the California Sub-Class.

105.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*., prohibits "any unlawful, unfair or fraudulent business act or practice."

106.   As alleged herein, FCA has violated the UCL by engaging in unlawful, unfair, and fraudulent business acts or practices.

107.   In violation of the UCL, FCA employed unfair, unlawful and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles. FCA knowingly concealed, suppressed, and/or omitted material facts regarding the Defective Shifter System and associated safety hazard and misrepresented the standard, quality, or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the California Sub-Class.

108.   FCA actively suppressed the fact that the Defective Shifter System in Class Vehicles is defective and presents a safety hazard because of materials, workmanship, design, and/or manufacturing defects. Further, FCA employed unfair, unlawful, and fraudulent business practices to deny repair or replacement of Defective Shifter System within a reasonable time in violation of the UCL.

109.   FCA breached its warranties, the CLRA, the Song-Beverly Consumer Warranty Act, and the Magnuson-Moss Warranty Act, as alleged herein, in violation of the UCL.

110.   FCA's unfair, unlawful and fraudulent business practices were likely to deceive a reasonable consumer. Plaintiff and members of the California Sub-Class had no reasonable way to know that Class Vehicles contained Defective Shifter Systems which were defective in materials, workmanship, design, and/or manufacture and posed a safety risk. FCA possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the defect in the Defective Shifter System and associated safety risks, and any reasonable consumer would have relied on FCA's misrepresentations and omissions as the Plaintiff and members of the California Sub-Class.

111.   FCA intentionally and knowingly misrepresented and omitted facts regarding the Defective Shifter System and associated safety hazard with the intent to mislead Plaintiff and members of the California Sub-Class. FCA knew, or should have known, that the Defective Shifter System wrongly indicates that cars are in Park when they are not and, also, fails to include a safety override that would automatically put the vehicle in Park or engage a parking brake when a driver attempts to exit the vehicle when it is not in Park.

112.   FCA owed a duty to disclose the Defective Shifter System and its corresponding safety hazard to Plaintiff and members of the California Sub-Class because FCA possessed superior and exclusive knowledge regarding the defect and the hazard associated with the Defective Shifter System. Rather than disclose the defect, FCA engaged in unfair, unlawful, and fraudulent business practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective Shifter Systems.

113.   FCA's unfair, unlawful, and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective Shifter System were intended to mislead consumers and misled Plaintiff and members of the California Sub-Class.

114.   At all relevant times, FCA's unfair and deceptive acts or practices, affirmative misrepresentations, and/or omissions regarding the defect in the Defective Shifter System and its corresponding safety hazard were material to Plaintiff and members of the California Sub-Class. When Plaintiff and members of the California Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles's shifter systems would correctly indicate when the vehicles are in Park and when they are in another gear.  Had FCA disclosed that the Class Vehicles incorporate a Defective Shifter System that wrongly indicates that cars are in Park when they are not in

Park, Plaintiff and members of the California Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

115.    FCA had a continuous duty to Plaintiff and members of the California Sub-Class to refrain from unfair, unlawful, and fraudulent practices under the UCL and to disclose the defect and associated safety hazard. FCA's unfair, unlawful, and fraudulent acts or practices, affirmative misrepresentations, and/or material omissions regarding the defect in the Defective Shifter System and corresponding safety hazard are substantially injurious to consumers. As a result of FCA's knowing, intentional concealment and/or omission of the Defective Shifter System and associated safety hazard in violation of the UCL, Plaintiff and members the California Sub-Class have suffered harm and/or continue to suffer harm by the threat of being subject to vehicle rollaway incidents, other unavoidable safety hazards, and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis, repair or replacement of the Defective Shifter System, and the diminished value of their vehicles as a result of FCA's unfair, unlawful, and fraudulent acts and practices in the course of its business.

116.    FCA has knowingly and willfully engaged in the unfair, unlawful, and fraudulent business practices alleged herein. Further, FCA unconscionably marketed the Class Vehicles to uninformed consumers to maximize profits by

selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

117. FCA's unfair, unlawful, and fraudulent acts and practices have harmed and continue to harm Plaintiff and members of the California Sub-Class, have negatively affected the public interest, and present a continuing safety hazard to Plaintiff and members of the California Sub-Class.

118. Plaintiff and members of the California Sub-Class have suffered injury in fact, including lost money or property, as a result of FCA's misrepresentations and omissions.

119. Plaintiff and members of the California Sub-Class seek an order enjoining FCA's unfair, unlawful, and fraudulent practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the UCL and California law.

## COUNT III
## VIOLATION OF CALIFORNIA'S CONSUMERS
## LEGAL REMEDIES ACT
## (CAL. CIV. CODE § 1750, *ET SEQ.*)
## ON BEHALF OF THE CALIFORNIA SUB-CLASS

120. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

121. Plaintiff brings this Count on behalf of the California Sub-Class.

122. The Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq.*, "protect[s] consumers against unfair and deceptive business practices." *See* Cal. Civ. Code § 1760.

123. Plaintiff and members of the California Sub-Class are consumers within the meaning Cal. Civ. Code § 1761(d).

124. Plaintiff and members of the California Sub-Class purchased their Class Vehicles primarily for personal, family, or household purposes.

125. The Class Vehicles are goods within the meaning of Cal. Civ. Code § 1761(a).

126. FCA violated and continues to violate the CLRA by engaging in unfair and deceptive trade practices, including, *inter alia*: (1) representing that Class Vehicles have characteristics which they do not; (2) representing that the Class Vehicles are of a particular standard when they are of another; and (3) advertising the Class Vehicles with the intent not to sell them as advertised. *See* Cal. Civ. Code § 1170.

127. FCA further violated the CLRA by failing to disclose within the warranty period, or any time thereafter, the material fact that the Class Vehicles incorporate a Defective Shifter System that wrongly indicates that cars are in Park when they are not and, also, fails to include a safety override that would

automatically put the vehicle in Park or engage a parking brake when a driver attempts to exit the vehicle when it is not in Park.

128.   FCA knew, or should have known, or was reckless in not knowing of the defective design and/or manufacture of the Defective Shifter System, and that the Class Vehicles were not suitable for their intended use.

129.   FCA violated the CLRA by actively concealing the material fact that the Class Vehicles incorporate a Defective Shifter System that subjects Plaintiff and California Sub-Class members to the threat of vehicle rollaway incidents and/or an associated safety hazards for the purpose of selling additional Class Vehicles and/or transferring the cost of repair or replacement of the Defective Shifter System to Plaintiff and California Sub-Class members.

130.   The fact that the Defective Shifter System installed in the Class Vehicles subjects Plaintiff and California Sub-Class members to the threat of vehicle rollaway incidents and/or an associated safety hazards is material because Plaintiff and members of the California Sub-Class had a reasonable expectation that the vehicles would not suffer from a Defective Shifter System that would expose them and other vehicle occupants to the threat of vehicle rollaway incidents and/or an associated safety hazards.  No reasonable consumer expects a vehicle to incorporate a Defective Shifter System that exposes drivers and other vehicle

occupants to the threat of vehicle rollaway incidents and/or an associated safety hazards.

131.   FCA has knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein. Further, FCA unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety hazard.

132.   FCA's unlawful acts and practices affect the public interest, and trade and commerce in the State of California, and present a continuing safety hazard to Plaintiff and members of the California Sub-Class.

133.   As a direct and proximate result of FCA's violations of the CLRA, Plaintiff and members of the California Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective Shifter System; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective Shifter System; and/or (3) the diminished resale value of the Class Vehicles containing the Defective Shifter System.

134.   With this filing, and on this Count, Plaintiff and members of the California Sub-Class seek an order enjoining FCA's unfair and deceptive practices.

## COUNT IV
## FRAUDULENT CONCEALMENT
## (UNDER CALIFORNIA LAW)
## ON BEHALF OF THE CALIFORNIA SUB-CLASS

135.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

136.   Plaintiff brings this Count on behalf of the California Sub-Class.

137.   As set forth above, FCA concealed and/or suppressed material facts concerning the safety, quality, functionality, and reliability of the Class Vehicles.

138.   FCA had a duty to disclose these safety, quality, functionality, and reliability issues because they consistently marketed the Class Vehicles as safe and proclaimed that safety is one of FCA's highest corporate priorities. Once FCA made representations to the public about safety, quality, functionality, and reliability, FCA was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

139.   In addition, FCA had a duty to disclose these omitted material facts because they were known and/or accessible only to FCA which has superior knowledge and access to the facts, and FCA knew they were not known to or reasonably discoverable by Plaintiff and the other Class members. These omitted

62

facts were material because they directly impact the safety, quality, functionality, and reliability of the Class Vehicles.

140.   Whether or not the Class Vehicles' Defective Shifter System worked; whether the Defective Shifter System reliably shifted into Park when the driver intended to idle the vehicle; whether the Defective Shifter System wrongly indicated that cars are in Park when they are not; and whether the Defective Shifter System, in fact, could and should have been equipped with a safety override in order to mitigate risk to consumers, are material safety concerns. FCA possessed exclusive knowledge of the defects rendering the Class Vehicles inherently more dangerous and unreliable than similar vehicles.

141.   FCA actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and members of the California Sub-Class to purchase or lease Class Vehicles at a higher price for the Class Vehicles which did not match the Class Vehicles' true value.

142.   FCA still has not made full and adequate disclosure of the defect in the Defective Shifter System and continues to defraud Plaintiff and the other California Sub-Class members.

143.   Plaintiff and the other California Sub-Class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff's and the other California

Sub-Class members' actions were justified. FCA was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the California Sub-Class.

144.   As a result of the concealment and/or suppression of the facts alleged herin, Plaintiff and the other California Sub-Class members sustained damage.

145.   FCA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the other California Sub-Class members' rights and well-being to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE §2314)
### ON BEHALF OF THE CALIFORNIA SUB-CLASS

146.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

147.   Plaintiff brings this Count on behalf of the California Sub-Class.

148.   FCA is and was at all relevant times a merchant with respect to the Class Vehicles under Cal. Com. Code §2314.

149.   Pursuant to Cal. Com. Code §2314, FCA impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

150.   Plaintiff and members of the Classes purchased or leased the Class Vehicles from FCA by and through FCA's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, FCA was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. FCA knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

151.   The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in the Defective Shifter System (at the time of sale or lease and thereafter) and present an undisclosed safety hazard to drivers and occupants. Thus, FCA breached its implied warranty of merchantability.

152.   FCA cannot disclaim its implied warranty as it knowingly sold or leased a defective product.

153.   FCA was provided notice of the defect in the Defective Shifter System by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA, and through its own testing. Affording FCA a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because FCA has known of and concealed the

Defective Shifter System and, on information and belief, has refused to repair or replace the Defective Shifter System free of charge within a reasonable time.

154.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

155.   Any attempt by FCA to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, FCA's warranty limitation is unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in FCA's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Classes. Among other things, Plaintiff and members of the Classes did not determine these time limitations, the terms of which unreasonably favored FCA. A gross disparity in bargaining power existed between FCA and members of the Classes, and FCA knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective Shifter System posed a safety hazard.

156.   Plaintiff and members of the Classes have been excused from performance of any warranty obligations as a result of FCA's conduct described herein.

66

157.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment, and the terms of the express warranty.

## COUNT VI
## BREACH OF EXPRESS WARRANTY
## (CAL. COM. CODE §2313)
## ON BEHALF OF THE CALIFORNIA SUB-CLASS

158.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

159.   Plaintiff brings this Count on behalf of the California Sub-Class.

160.   At all relevant times, FCA was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.

161.   FCA provided Plaintiff and members of the Classes with one or more express warranties.  Specifically, in connection with the purchase or lease of the Class Vehicles, FCA provides an express Basic Limited Warranty ("BLW") for a period of three years or 36,000 miles, whichever occurs first. This BLW exists to cover defects in "material, workmanship or factory preparation." FCA also provides a powertrain limited warranty that covers the engine and transmission, including the shifter assembly, for five years or 100,000 miles, whichever occurs first, for the Class Vehicles.

162. Pursuant to Cal. Com. Code §2313, FCA breached its express warranties by failing to remedy the defect in the Defective Shifter System free of charge within a reasonable time.

163. Any attempt by FCA to disclaim or limit its express warranties is unconscionable and unenforceable here. Specifically, FCA's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in FCA's warranty periods are also unconscionable and inadequate to protect Plaintiff and members of the California Sub-Class. Among other things, Plaintiff and members of the California Sub-Class did not determine these time limitations, the terms of which unreasonably favored FCA. A gross disparity in bargaining power existed between FCA and members of the California Sub-Class, and FCA knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

164. FCA was provided notice of the defect in the Defective Shifter System by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA, and through its own testing. Affording FCA a reasonable opportunity to cure its breach of its express warranties would be unnecessary and futile here because FCA has known of and concealed the

Defective Shifter System and, on information and belief, has refused to repair or replace the Defective Shifter System free of charge within a reasonable time.

165.   As a direct and proximate result of FCA's breach of its express warranties, Plaintiff and members of the California Sub-Class have suffered actual damages in an amount to be proven at trial.

166.   Plaintiff and members of California Sub-Class have been excused from performance of any warranty obligations as a result of FCA's conduct described herein.

167.   The applicable statute of limitations for the express warranty claims have been tolled by the discovery rule and fraudulent concealment.

## COUNT VII
## VIOLATION OF THE SONG-BEVERLY
## CONSUMER WARRANTY ACT
## (CAL. CIV. CODE §§ 1791, *ET SEQ.*)
## ON BEHALF OF THE SONG-BEVERLY SUB-CLASS

168.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

169.   Plaintiff brings this Count on behalf of the Song-Beverly Sub-Class.

170.   Plaintiff and members of the Song-Beverly Sub-Class purchased or leased the Class Vehicles from FCA by and through FCA's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, FCA was the

manufacturer, distributor, warrantor, and/or seller of Class Vehicles. FCA knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

171.   FCA provided Plaintiff and members of the Classes with one or more express warranties.  Specifically, in connection with the purchase or lease of each one of its new vehicles, FCA provides an express Basic Limited Warranty ("BLW") for a period of three years or 36,000 miles, whichever occurs first. This BLW exists to cover defects in "material, workmanship or factory preparation." FCA also provides a powertrain limited warranty that covers the engine and transmission, including the shifter assembly, for five years or 100,000 miles, whichever occurs first, for the Class Vehicles.

172.   Under warranties provided to members of the Classes, FCA promised to repair or replace covered defective components, including the Defective Shifter System, at no cost to owners and lessees of the Class Vehicles. As alleged herein, FCA breached these warranties.

173.   Plaintiff and members of the Classes experienced the defect in the Defective Shifter System within the warranty periods, but FCA failed to inform Plaintiff and members of the Classes of the existence of the Defective Shifter System and associated safety hazard, and failed to provide a suitable repair or

replacement of the Defective Shifter System free of charge within a reasonable time.

174.  FCA impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used, including for safe and reliable transportation.

175.  The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in the Defective Shifter System (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, FCA breached its implied warranties of merchantability and fitness.

176.  Any attempt by FCA to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, FCA's warranty limitations are unenforceable because it knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in FCA's warranty periods are also unconscionable and inadequate to protect Plaintiff and members of the Classes. Among other things, Plaintiff and members of the Classes did not determine these time limitations, the terms of which unreasonably favored FCA. A gross disparity in bargaining power existed between FCA and members of the Classes, and FCA knew or should have known that the

Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

177.   FCA was provided notice of the defect in the Defective Shifter System by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA, and through its own testing. Affording FCA a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because FCA has known of and concealed the Defective Shifter System and, on information and belief, has refused to repair or replace the Defective Shifter System free of charge within a reasonable time.

178.   FCA breached its express and implied warranties in violation of Cal. Civ. Code § 1791 *et seq.*

179.   As a direct and proximate result of FCA's breach of its express and implied warranties, Plaintiff and members of the Classes have suffered actual damages in an amount to be proven at trial.

180.   Plaintiff and members of the Classes have been excused from performance of any warranty obligations as a result of FCA's conduct described herein.

181.   Plaintiff and members of the Song-Beverly Sub-Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of FCA's willful conduct alleged herein. Plaintiff and members of the Song-Beverly Sub- Class also

seek reimbursement, replacement of the Defective Shifter Systems, and/or revocation of the purchase or lease of the Class Vehicles, and all other relief available under Cal. Civ. Code § 1794.

182.   The applicable statute of limitations for the express and implied warranty claims have been tolled by the discovery rule and fraudulent concealment. The applicable statute of limitations for implied warranty claims has also been tolled by the terms of the express warranty.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Class and Sub-Classes, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff, the Class, and Sub-Classes, and award the following relief:

- An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class and Sub-Classes, and Plaintiff's counsel as counsel for the Class and Sub-Classes;

- An order that FCA provide immediate notice to the Class of the risk of rollaways with the Class Vehicles, advising the Class of the reports of rollaway incidents, and instructing the Class to use precautions, including an instruction to turn off the ignition and apply the parking brake whenever the car is placed in Park in order to reduce the risk of rollaways;

- An order that FCA is required to install an effective safety override in the Class Vehicles to address the risk of rollaways;

- An order awarding declaratory relief and enjoining FCA from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

- Appropriate injunctive and equitable relief with injunctive relief being the only remedy sought on the CLRA Count;

- A declaration that FCA is financially responsible for all Class notice and the administration of Class relief;

- An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

- An order awarding any applicable statutory and civil penalties;

- An order requiring FCA to pay both pre- and post-judgment interest on any amounts awarded;

- An award of costs, expenses and attorneys' fees as permitted by law; and

- Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED:  January 26, 2017       Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive, Suite 300
Rochester, MI  48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
ssa@millerlawpc.com

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Joseph H. Meltzer
Peter A. Muhic
Melissa L. Troutner (*Admission
forthcoming*)
280 King of Prussia Road
Radnor, PA  19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
pmuhic@ktmc.com
mtroutner@ktmc.com

*Attorneys for Plaintiff and the Proposed
Classes*